IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Criminal No. DKC 26-121 |
| FILIBERTO DELGADILLO FLORES | : | |

**MEMORANDUM OPINION**

The Government filed a motion to review the release order entered by Magistrate Judge Charles D. Austin. (ECF No. 24). The parties provided supplemental briefs (ECF Nos. 30 and 31), and the undersigned listened to the recording of the hearing held by Judge Austin on August 12, 2026. No oral hearing is necessary. Local Rule 105.6. For the following reasons, the motion will be granted and the release order revoked. There currently are no conditions, or combination of conditions, that will reasonably assure the safety of the community.

## I. Background

Mr. Delgadillo Flores, Defendant, is charged in a two-count indictment with possession with intent to distribute five kilograms or more of cocaine on or about December 2, 2025, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(ii)(II); and possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). If convicted, he

faces a mandatory minimum sentence of 10 years, and a maximum of life, on count one, and a mandatory minimum sentence of five years, consecutive, and a maximum of life on count two. The Defendant was initially arrested, charged, and detained in state court. After the April federal indictment, he had an initial appearance on April 13, 2026, at which time he consented to detention. (ECF No. 9). After a substitution of counsel, and upon his request, a detention hearing was held on August 12, 2026. The Government sought detention based on danger to the community.

## II. Standard of Review

> If the defendant "is ordered released by a magistrate judge . . . the attorney for the Government may file . . . a motion for revocation of the order or amendment of the conditions of release" for consideration by the presiding district judge. 18 U.S.C. § 3145(a)(1). The district judge reviews the matter de novo and "must make an independent determination" as to pretrial detention or conditions of release. *United States v. Gallagher*, Crim. No. SAG-19-0479, 2020 WL 2614819, at *3 (D.Md. May 22, 2020) (quoting *United States v. Stewart*, 19 F.App'x 46, 48 (4th Cir. 2001)).

*United States v. Reymundo*, 792 F.Supp.3d 612, 619 (D. Md. 2025).

> Under the Bail Reform Act, the government may move for a defendant's pretrial detention if the case involves, among other offenses, "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled

Substances Act (21 U.S.C. 801 et seq.) . . . ." 18 U.S.C. § 3142(f)(1)(C). When a defendant is charged with such an offense, . . . and the Court finds probable cause to believe the defendant committed the crime, there is a presumption, subject to rebuttal by the defendant, that "no combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3). The presumption of detention "places 'a limited burden of production—not a burden of persuasion' on the defendant to 'com[e] forward with evidence that he does not pose a danger to the community or a risk of flight.'" *United States v. Khusanov*, 731 F.App'x 19, 21 (2d Cir. 2018) (quoting *United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011)); see *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010); *United States v. Moss*, 887 F.2d 333, 338 (1st Cir. 1989); *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985); *United States v. Alatishe*, 768 F.2d 364, 371 (D.C.Cir. 1985). When the defendant meets his burden of production, it "remains a factor to be considered among those weighed by the district court" but "does not eliminate the presumption favoring detention." *Khusanov*, 731 F.App'x at 21 (quoting *English*, 629 F.3d at 319). The government bears the burden of proving by a preponderance that no condition or combination of conditions will reasonably assure the defendant's appearance and by a clear and convincing showing that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(f); *see Khusanov*, 731 F.App'x at 21 (noting that the "ultimate burden" of proof remains on the government to "mak[e] a preponderance showing that the defendant poses a risk of flight and a clear and convincing showing that he presents a danger to persons or the community"); *Stone*, 608 F.3d at

> 945 ("As our sister circuits have found, section 3142(e)(3)'s presumption in favor of detention imposes only a 'burden of production' on the defendant, and the government retains the 'burden of persuasion.' ") (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)); *Moss*, 887 F.2d at 338; *Suppa*, 799 F.2d at 119; *Portes*, 786 F.2d at 764; *Alatishe*, 768 F.2d at 371.

*United States v. Davis*, 449 F.Supp.3d 532, 534 (D.Md. 2020) (alterations in original).

Pursuant to § 3142(g), the court is to consider the following:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including –
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release

> pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

**III. Discussion**

Prior to the initial detention hearing, pretrial services provided a modified report based on information from the U.S. Attorney, U.S. Immigration and Customs Enforcement ("ICE"), and automated record checks. The Defendant was not interviewed. The report stated that the Defendant was born in Mexico in 1979, is illegally residing in the United States, and that a final order of removal has been entered. He was arrested in Laredo, Texas, in 2007 for being an inadmissible alien. He received probation before judgment in 2013 for Prostitution and Driving a Motor Vehicle Without a License, and in 2015 again for driving without a license. The report recommended detention. At the hearing, the pretrial services officer reported that a record check was done on the occupants of the proposed residence and none was found. (The Defendant recites in his recent response to the Government's position that pretrial "screened and approved" the residence. That is not what I heard on the recording. No home visit has happened.)

The Government moved for detention under 18 U.S.C. § 3142(f)(1)(B), (C), and (E) and contended that there was a rebuttable presumption under § 3142(e)(3)(A) and (B). The Government proffered at the hearing and repeats in its recent memorandum that, at the end of October 2025, the Drug Enforcement Administration received information about drug activity that led them, in November, to identify the Defendant, known as "Felix," as a person of interest. He regularly used two vehicles registered to his significant other. They identified his residence. He often travelled to two storage units near the house, he was the only one to access the units, using a key code to access the property and keys to access the units. After he left the units, a canine gave a positive alert for controlled dangerous substances in the units and the vehicles. GPS trackers on vehicles showed daily trips to the units and short stops afterwards, indicative of drug trafficking. On December 1, law enforcement saw the Defendant meet someone at the unit who then left in a truck. A traffic stop was conducted of that vehicle, and it was searched. Nothing was seized, but two hidden compartments for contraband were found. Search warrants were executed on a home on Hewitt Way, where $51,400 was found, and at both storage units. In number 4028, a safe contained one quarter kilo of cocaine, two assault rifles,

ammunition (thousand rounds), magazines (some high capacity), and documents in the Defendant’s name. Number 7105 contained eight sealed kilo packages of cocaine. There was a solid month of surveillance revealing travel only in Maryland. The Government noted that the Defendant had been here, illegally, nearly 20 years.

The defense attempted to fill in the gaps with proffers at the hearing and in the recent filing. (All is by way of proffer; no witnesses appeared and no documentary evidence was produced.) In an attempt to rebut the presumption, he suggested 24/7 home confinement at his “in-laws’” and location monitoring. The plan is not to return to where he lived before, but to reside at 916 Quantril Way, Baltimore, MD 21205. His in-laws are both U.S. citizens. Pretrial spoke to them and found no issues with their criminal background. The Defendant is 47 years old, has no legal status in the United States, but has been here a long time, speaks fluent English, and has relatives in Maryland including his spouse,[1] adult child, in-laws, nephews, others in Baltimore and elsewhere in the United States. He has some work history, from 2010 until his arrest, as an independent contractor doing

[1] The Defendant filled out a financial affidavit at the time he sought public defender representation. (ECF No. 16). That affidavit states that he is unemployed and separated or divorced. It lists no dependents.

maintenance work and light construction, and before that, working as an assistant manager at a 7-11, and in construction. He has a limited criminal history (prostitution, approached by undercover officer), no problem appearing as required, did community service, and has the ability to comply with release conditions. He does not have a social security number, so he cannot obtain a driver's license. When the Defendant was arrested and Mirandized, he confessed. He told law enforcement exactly what they would find, the amount, and where. The drugs were only in the storage units; not in the residence or cars. Counsel argued that there was no evidence that he ever had the firearm in a car or anywhere other than in the storage unit. He did not travel very far. GPS tracking entries noted that the Defendant went to the in-laws' house with black plastic bags on several occasions, but defense counsel argued that he was bringing them lunch. Counsel pointed out that the units were rented in another person's name and that others came to the storage unit as well.

Defense counsel argued that the court cannot consider the Defendant's illegal status because it is not in the list of factors in § 3142. But his immigration status does relate to ties to the community and is as relevant as the length of time he has resided in the United States. The fact that there is an ICE detainer is

another thing and will not be considered in the release/detention decision.

Judge Austin found that the presumption had been rebutted and that there were conditions that would reasonably assure the safety of the community. He recognized the seriousness of the charged conduct and the strength of the evidence. He found that those factors were mitigated by the Defendant’s “colorable” release plan, the absence of any history of failures on probation, the length of time in the community, his ties to the community in form of family, spouse, child, in-laws, his work history, and minor criminal history with no issue appearing at court proceedings. He recognized the danger from drug distribution and the fact that no “deep dive” into the in-laws’ home had been done.

Judge Austin ordered the release of the Defendant for 24/7 lockdown at his father-in-law’s residence but did not place the Defendant in anyone’s third-party custody. At the time, all that had been proffered was that the owners and residents are the Defendant’s in-laws, they are U.S. citizens, and they have no criminal records. The new memorandum reports, without names, that the in-laws own the leasehold of the “modest” home they have lived in for over 25 years, have limited financial resources, are a retired landscaper and homemaker, and will “always” be home.

Despite the fact that the presumption is rebutted by Defendant's proffered information, the record does not substantiate the bona fides of the release plan or its adequacy to provide the conditions reasonably necessary to assure the safety of the community. The charges and proffered evidence reflect a significant role in large-scale drug distribution along with the presence of powerful firearms and much ammunition. The Defendant has long disregarded the immigration laws, managing to stay in the U.S. despite minor brushes with law enforcement. Even though the surveillance in this case lasted only a few weeks, one does not become involved in this level of drug trafficking overnight. While not charged as a conspiracy, the proffer indicates that the Defendant did not accomplish the drug trafficking alone. Others are seen meeting with him at the storage units, and he made brief stops at various locations after leaving the units.

In order to ameliorate the danger of drug trafficking, the court would need assurance that the Defendant would be in the company of a suitable adult at all times who agrees to be a third-party custodian, with all of its attendant responsibilities, including accompanying him to all appointments, and that he would reside at a residence inspected and approved by pretrial services. Approval of a third-party custodian entails personally meeting

with the magistrate judge and a clear understanding of what the role requires. Drug trafficking is not a solo activity and can be undertaken, frankly, anywhere. Location monitoring only tells us where someone is, not what he is doing or who else is there. And while he would be restricted to the residence, he would have permission to leave for various reasons, including medical care, attorney visits, and court appearances. Travelling alone, then, might be contemplated. If left alone at the residence, others might be able to visit to participate in the drug trafficking.

Thus, the court concludes that the plan proposed at the detention hearing is inadequate. There presently are no conditions or combination of conditions that would reasonably assure the safety of the community.

Accordingly, the release order entered by Judge Austin IS HEREBY RESCINDED. The Defendant shall remain detained. A separate detention order will follow.

August 19, 2026

/s/

DEBORAH K. CHASANOW
United States District Judge